IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN J. KNOBBE, ) | 8:05CV489 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| BANK OF AMERICA, N.A., ) | |
| BRUMBAUGH & QUANDAHL ) | |
| P.C.L.L.O., FREDERICK J. HANNA ) | |
| & ASSOCIATES AND ) | |
| JOHN DOES 1 - 10, ) | |
| ) | |
| Defendants. ) | |

The plaintiff is a state court judgment debtor, and has brought this action alleging that actions taken prior to and following a state court default judgment violate unspecified sections of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u; a provision of the Truth in Lending Act ("TILA"); several sections of the Fair Debt Collection Practices Act ("FDCPA"); and unspecified sections of the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. Ann. §§ 87-301 *et seq.* The defendants are the bank to which the plaintiff was indebted for credit card debt and two law firms which represented the bank in collecting the indebtedness.[1] This matter is before the court upon Defendants' motion for summary judgment. (Filing 45.) I will grant the motion as to the federal claims. With limited exceptions inapplicable here, the FCRA imposes obligations only upon "consumer reporting agencies," and none of the defendants are consumer reporting agencies.[2] The TILA

---

[1] The complaint also names as defendants "John Does 1-10." There has been no attempt to identify or serve these John Doe defendants.

[2] Defendants' brief totally ignores the FCRA claim and the pendent state claim. Suffice it to say that the motion for summary judgment is not being granted on the strength of Defendants' brief.

claim is time-barred. The FDCPA claims are either time-barred, or are claims over which this court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine.[3]  The FDCPA claims against Bank of America fail for the additional reason that it is not a "debt collector" within the meaning of that act.  I will dismiss the pendent state claim as no federal claims remain.

I.

The undisputed facts are set forth below.[4]

1.     The "debt" which is the genesis of this action is an obligation owed by Knobbe to Bank of America pursuant to a Bank of America-issued credit card. (Amended Complaint ¶ 9; Filing 46 (Defs.' Br. in Supp. of Mot. for S.J. (hereinafter "Defs.' Br.") at 4).)

2.     This obligation is a "debt" within the meaning of the FDCPA. (Amended Complaint ¶ 10; Filing 46, Defs.' Br. at 3.)

---

[3]*See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

[4]Defendants failed to submit a statement of facts, consisting of short numbered paragraphs, each containing pinpoint reference to materials relied upon to support the material facts in that paragraph, as required by NECivR 56.1(a).  Plaintiff failed to controvert the facts submitted by Defendants, as required by NECivR 56.1(b). Ordinarily, I would deny the motion for noncompliance with the local rules. However, I have culled the pertinent facts from the record because: (1) the facts needed to resolve the motion are readily available in the documents attached to the amended complaint or in the certified transcript of state court records filed by Defendants in support of their motion (to which Plaintiff did not object), (2) this case is nearly two years old, and (3) summary judgment is clearly appropriate.

*Actions prior to October 24, 2004*
*(as I later explain, TILA and FDCPA claims based on these actions are time-barred)*

3. Knobbe mailed a certified letter captioned "Actual Notice and Demand for Adequate Assurance of Due Performance" to the "Dispute Department" of Bank of America. The heading of the letter bears the typewritten date of "November 29, 2003" and the close of the letter contains the handwritten date "12-10-03" opposite Knobbe's handwritten signature. (Ex. 1 to Amended Complaint at CM/ECF pages 11-14 (letter).) Knobbe asserts that his certified letter "should have been construed as, amongst other disputes, a billing error notice as that term is defined under 15 U.S.C. § 1666(a) to a creditor," and that the letter "request[ed] additional clarification of some transactions and complain[ed] of omitted material disclosures that affect the finance charge, penalty rate, and annual percentage rate on multiple periodic statements." (Amended Complaint at ¶ 11.) There is no indication that Bank of America responded to this letter.

4. On January 30, 2004, Bank of America sent Knobbe a letter demanding payment on the credit card account, stating that his account had been cancelled because it was past due, and requesting that he destroy his Bank of America credit cards. The letter was on Bank of America letterhead and signed by a Bank of America employee. (Ex. 2 to Amended Complaint at CM/ECF page 15 (letter).)

5. Knobbe asserts that on or about February 5, 2004, Bank of America sold or otherwise transferred the debt to "an unknown third party debt buyer, which may be, Defendant Frederick J. Hanna & Associates for collection from Plaintiff." (Amended Complaint ¶ 13.) The record reflects that Frederick J. Hanna & Associates (hereinafter, "Hanna") is a law firm which represented Bank of America in collection efforts.

6. On behalf of Bank of America, an attorney with the Hanna law firm sent a February 6, 2004 letter to Knobbe seeking collection of the unpaid credit card debt.

Among other things, the letter explicitly stated "[t]his is an attempt to collect a debt." (Ex. 3 to Amended Complaint at CM/ECF page 16 (letter).)

7.      Knobbe asserts that on or about March 25, 2004, Bank of America sold, or Hanna consigned or transferred "the alleged debt to an unknown third party debt buyer, which may be, Defendant Brumbaugh & Quandahl, P.C., for collection from Plaintiff." (Amended Complaint ¶ 15.) There are no specific factual allegations regarding action by Hanna occurring after this March 25 "transfer" to Brumbaugh & Quandahl. The record reflects that Brumbaugh & Quandahl is a law firm which represented Bank of America in collection efforts. Other than the February 6, 2004 letter, no documents in the record reflect that they were prepared by Hanna. None of the documents in the certified transcript of state court records reflects service by or to Hanna.

8.      On May 4, 2004, the law firm of Brumbaugh & Quandahl, P.C., LLO filed a complaint in the County Court of Cuming County, Nebraska on behalf of Bank of America for money owed by Kevin J. Knobbe on a credit card account. (Ex. 4 to Amended Complaint at CM/ECF pages 17-21 (Complaint in state court case no. CI 04-55); Filing 36[5] at CM/ECF pages 1 -2.)

9.      Knobbe did not answer the May 4, 2004 state court complaint because he believed he was working with a debt consolidation company which had reached a near-settlement of this dispute and he was thus not required to answer, although he was mistaken and the company with which he believed he was working later stole his money. (Filing 46, Defs.' Br at 7; Filing 36 at CM/ECF page 9, ¶¶ 11, 14 (Knobbe's state court motion to vacate default judgment).)

---

[5]The certified transcript of state court records is contained in filings 36 and 37. I cite to the CM/ECF page numbers in filings 36 and 37 when citing the state court records.

-4-

10.     After proper service, the County Court of Cuming County entered default judgment against Knobbe on June 29, 2004. The judgment included interest, court costs, and attorneys' fees. (Filing 36 at CM/ECF pages 5-6.)

11.     On October 8, 2004, Knobbe filed a motion in the state court action seeking to have the default judgment vacated. The state court received evidence and heard arguments by the parties. Ultimately, on January 5, 2005, the state court denied Knobbe's motion to vacate. (Filing 36 at CM/ECF pages 7 - 9, 14.)

*Actions taken after October 24, 2004*

12.     On February 7, 2005, Brumbaugh & Quandahl filed with the County Court of Cuming County documents seeking a summons and order of garnishment. (Filing 36 at CM/ECF pages 14-15.)

13.     On February 14, 2005, Knobbe filed a document in the state court captioned "Refusal for Fraud," which challenged the default judgment. (Filing 36 at CM/ECF pages 16-17.) Knobbe did not perfect an appeal of the state court's denial of his motion to vacate the default judgment.

14.     On February 14, 2005, a "Summons and Order of Garnishment and Interrogatories" was issued by the County Court of Cuming County, Nebraska. (Ex. 5 to Amended Complaint, at CM/ECF page 5 (interrogatories not included in exhibit); Filing 36 at CM/ECF page 16 (same).) The garnishee was Farmers & Merchants National Bank of West Point, Nebraska, and Knobbe was the judgment debtor. (*Id.*) On that same date, Knobbe's bank issued two "memo charges" reflecting that Knobbe's bank account had been charged $50.00 as a "fee for garnishment" and $8.80 pursuant to the garnishment order. (Ex. 5 to Amended Complaint at CM/ECF page 23.) Knobbe describes this action as follows: "Defendant froze Plaintiff's

account at Farmers and Merchants National Bank and seized the funds." (Amended Complaint ¶ 17.)

15. On February 18, 2005, Knobbe requested a hearing on the garnishment proceeding. (Filing 36 at CM/ECF page 18.) He also filed documents with the Cuming County court indicating that his debt to Bank of America was "discharged with a note," as he had tendered a promissory note to Bank of America in payment of the judgment. (Filing 36 at CM/ECF pages 19-21.)

16. On March 10, 2005, Knobbe filed a "Motion to Compel Plaintiff to Enter Satisfaction of Judgment," supported by an affidavit, asserting that his obligations under the judgment were satisfied by tendering a promissory note to Bank of America, and continuing to assert that the state court had no jurisdiction in the state court suit and that a "fraud" had been perpetrated on the state court. (Filing 36 at CM/ECF pages 23-25.)

17. On March 16, 2005, the County Court of Cuming County held a hearing on the garnishment and Knobbe's March 10 motion to compel Bank of America to enter a satisfaction of judgment. (Filing 36 at CM/ECF page 25.) Brumbaugh & Quandahl, on behalf of Bank of America, filed an application for an order to Farmers & Merchants Bank to deliver nonexempt funds. (Filing 36 at CM/ECF page 26.) Following the hearing, the County Court of Cuming County issued an order directing Farmers & Merchants Bank, as garnishee, to deliver nonexempt funds in the amount of $8.80. (Filing 36 at CM/ECF page 27.)

18. On March 21, 2005, Knobbe filed another motion to compel Bank of America to file a satisfaction of judgment. (Filing 36 at CM/ECF pages 27-29.) He also filed a "Motion of Refusal for Fraud for Lack of Jurisdiction," which alleged that the state court has no jurisdiction, the default judgment was invalid because Knobbe

never appeared, and that Knobbe owed no debt to Bank of America because the debt was never "validated." (Filing 36 at CM/ECF pages 30 - 32.)

19. On March 23, 2005, a Journal Entry documenting the rulings at the March 16 hearing was made. The entry reflects that on March 16, 2005, after a hearing on Knobbe's request for hearing regarding the garnishment and Knobbe's March 10 motion to compel Bank of America to enter satisfaction of judgment, the Cuming County Court found that Knobbe failed to prove that any exempt funds were being garnished and denied the motion to compel. (Filing 36 at CM/ECF pages 34-36.)

20. On April 4, 2005, Brumbaugh & Quandahl, on behalf of Bank of America, filed a motion for sanctions, attorney's fees and costs, asserting that Knobbe's March 21 motion to compel was frivolous, as an identical motion was denied by the court at the March 16 hearing. (Filing 36 at CM/ECF pages 37-42.)

21. An April 27, 2005 Journal Entry by the County Court of Cuming County reflects that on April 13, the court held a hearing on Bank of America's motion for sanctions and Knobbe's March 21 "Motion to Show Satisfaction of Judgment" and "Motion for Refusal for Fraud." All motions were denied. (Filing 36 at CM/ECF pages 58-59.)

22. Exactly one year after the state court complaint was filed, an "Execution" dated May 4, 2005 was directed by the clerk of the District Court of Cuming County to the Cuming County Sheriff. It indicated that judgment in the amount of $9,005.50, together with costs and interest from the date of execution, had been recovered by Bank of America against Knobbe, and directed the sheriff to execute on the judgment to collect the amount due. (Ex. 6 to Amended Complaint at CM/ECF page 24 .)

23.     On May 13, 2005, Knobbe filed a "Refusal for Fraud of Journal Entry" with the County Court of Cuming County, reciting that "for fraud" Knobbe refused to accept the copy of the April 27, 2005 journal entry which was mailed to him. (Filing 36 at CM/ECF pages 59-62 and Filing 37 at CM/ECF page 1.)

24.     On September 19, 2005, Knobbe filed a letter in the county court. The letter was addressed to the sheriff and two deputy sheriffs, as well as the district and county court clerks, the county attorney, and the county court judge. The rambling document recited that the sheriff's office had telephoned Knobbe regarding their intent to auction property belonging to Knobbe, and asserted that there was no legal authority to auction the property. (Filing 37 at CM/ECF pages 2-5.)

25.     On September 23, 2005, Knobbe also filed with the county court another "Refusal for Fraud for Lack of Jurisdiction." (Filing 37 at CM/ECF pages 6-8.)

26.     After publication of notice in the local newspaper, certain real property owned by Knobbe was sold at public auction on October 20, 2005. (Ex. 6 to Amended Complaint at CM/ECF page 25.)

27.     Knobbe filed this action on October 25, 2005. (Filing 1.) The original complaint named only Bank of America as a defendant. It contained allegations that an attorney named Margaret McDevitt (with the Brumbaugh & Quandahl firm) engaged in improper collection activity in violation of 15 U.S.C. §§ 1692(e), (f), and (g). It is unclear, but it appears that the allegedly improper collection activities were the filing of the state court complaint and efforts to execute upon the default judgment. (See filings 1, 18, 17.)

28.     With leave of this court, an amended complaint was filed on January 4, 2007. The amended complaint includes two new defendants (the law firms), contains new allegations regarding activity preceding the state court action and more specific

allegations regarding post-judgment efforts to collect on the judgment, and added FCRA, TILA and state law claims. (Filing 28.)

II.

Applying the familiar standard of review for motions for summary judgment, and construing the facts in the light most favorable to Knobbe as the non-moving party, I find that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law on the federal-law claims. Fed. R. Civ. P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929 (1994). I consider the claims in turn.

*Fair Credit Reporting Act*

The Amended Complaint alleges that Defendants violated the Fair Credit Reporting Act, 15 U.S.C. §§1681 - 1681u, without specifying the particular provisions allegedly violated. With one limited exception inapplicable here,[6] that act imposes obligations only upon a "consumer reporting agency." A "consumer reporting agency" is statutorily defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f). Neither Bank of America nor either of the defendant law firms is a "consumer reporting agency." Thus there is no violation of the Fair Credit Reporting Act.

---

[6]*See* 15 U.S.C. § 1681d, applicable to persons who procure or cause to be procured an investigative consumer report. The complaint alleges no facts which could support a § 1681d claim against the defendants.

## *Truth in Lending Act*

The complaint alleges a violation of one section of the Truth in Lending Act ("TILA"): 15 U.S.C. § 1666(a). (Amended Complaint ¶ 11.) Section 1666 generally provides that if a consumer who has been extended consumer credit sends the creditor a timely "written notice" of a "billing error," the creditor has specified obligations to respond to the notice of the error. For purposes of this motion, I *assume* that Knobbe's certified letter dated both "November 29, 2003" and "12-10-03" qualifies as the necessary written notice of a billing error required to trigger the creditor's obligations.[7] If it did trigger § 1666 obligations, Bank of America was required to take specified actions the date represented by the close of two of its complete billing cycles after receipt of the letter or ninety days after receipt of the letter, whichever is earlier. 15 U.S.C. § 1666(a). Assuming that the facts reflect a 15 U.S.C. § 1666(a) violation, that violation occurred, at the very latest, on or around March 9, 2004.[8]

---

[7] It may not. Although the letter does state that Knobbe "hereby dispute[s] the alleged debt," it does not assert that Knobbe did not incur the charges. Rather, the letter requested an affidavit indicating that the bank followed generally accepted accounting principles and the policies and procedures of the Federal Reserve Bank, explaining that "[i]n light of recent financial scandals," Knobbe wanted to be sure that "the people and entities claiming to have standing to collect really do have legitimate standing to collect . . . ." (Ex. 1 to Amended Complaint at CM/ECF page 11.) The letter requested a long list of "documentation," most of it irrelevant to the question whether Knobbe in fact owed the disputed amount to Bank of America, emphasized that providing "the original journal bookkeeping entries requested are of utmost importance," and specified that providing "copies of any billing statements or . . . copies of any standard cardholder agreement" would not constitute compliance with Knobbe's request. (*Id.* at CM/ECF page 13.)

[8] In the absence of evidence as to the billing cycle, I assume the ninety-day period is the appropriate measurement. I also assume the letter was received on the date it was mailed. The actual date of receipt is likely three to four days later, a date still seventeen months before this suit was filed.

This suit was not brought until October 25, 2005 (assuming that the allegations of the Amended Complaint relate back to the filing of the original complaint). The limitations period for violations of § 1666(a) is one year. 15 U.S.C. § 1640(e) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation.") The TILA claim is time-barred.

*Fair Debt Collection Practices Act*

The complaint also asserts multiple violations of the Fair Debt Collection Practices Act, codified at 15 U.S.C. §§ 1692-1692o. The provisions of the FDCPA on which Knobbe relies apply only to a "debt collector." 15 U.S.C. §§ 1692d, 1692e, 1692f, & 1692g. *Pollice v. National Tax Funding, L.P.*, 225 F. 3d 379, 403 (3d Cir. 2000) ("The FDCPA's provisions generally apply only to 'debt collectors.'"). The term "debt collector" for purposes of the FDCPA is defined at 15 U.S.C. § 1692a(6) and includes only the following categories:

> (1) persons in a business the principal purpose of which is the collection of debts, (2) persons who regularly collect or attempt to collect, directly or indirectly, debts owed or due another, and (3) creditors, who, in the process of collecting their own debts, use any names which would indicate that a third person is collecting or attempting to collect such debts.

*Kempf v. Famous Barr Co.*, 676 F. Supp. 937, 938 (E.D. Mo. 1988) (citing 15 U.S.C. § 1692a(6)). Creditors who collect in their own name are not "debt collectors." *Pollice*, 225 F. 3d at 403 (citing authorities); *cf. Schmitt v. FMA Alliance*, 398 F.3d 995, 998 (8th Cir. 2005) (refusing to impute knowledge of the creditor to the debt collector in part because "'[a] distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all.'"(internal citation omitted)). Bank of America is not a "debt collector" and thus has no FDCPA liability.

Turning to the FDCPA claims against the defendant law firms, I note that actions to enforce the FDCPA must also be brought within one year from the date of the violation. 15 U.S.C. § 1692k(d). Assuming for purposes of this motion that the allegations of the Amended Complaint relate back to the date of the filing of the original complaint on October 25, 2005, the FDCPA claims are timely only as to claims based on actions occurring on or after October 25, 2004. The Amended Complaint alleges that Defendants violated the FDCPA in these respects:

- Use of false, deceptive and misleading representations to collect a debt (with no assertions of fraud or misleading representations occuring after the filing of the state court lawsuit), in violation of § 1692e(10) (Amended Complaint ¶ 25);

- failure to comply with dispute resolution procedures prior to bringing the lawsuit, in violation of § 1692e(5) ( *id.* ¶ 26);

- "litigat[ing] an alleged debt that gives a false impression of the character, amount and legal status of the alleged debt, in violation of § 1692(e(2) (*id.* ¶ 27);

- failure to produce evidence that authorizes collection, costs, attorney fees, or the inclusion of interest, in violation of § 1692f(1) (*id.* ¶ 28);

- filed suit to collect an alleged debt without legal authority, in violation of § 1692f (*id.* ¶ 28);

- "litigated an alleged debt and engaged in conduct that was oppressive, where the natural intent of the conduct was to harass and abuse the Plaintiff" (with no allegation of "oppressive" conduct occuring after the filing of the state court lawsuit other than participation in the state court lawsuit and the post-judgment garnishment and sheriff's sale) in violation of § 1692d (*id.* ¶ 30);

-12-

- "failing to provide verification of the debt and continuing their debt collection efforts after the plaintiff had disputed the debt in writing," in violation of § 1692g(b) (*id.* ¶ 31); and

- "failing to cease and desist collection efforts until the alleged debt was verified," in violation of § 1692g(b) (*id.* ¶ 32) .

With the exception of alleged violations in connection with post-judgment remedies, which I address later, the alleged FDCPA violations are based on either the failure to appropriately respond to Knobbe's November 24, 2003 letter, the filing of the state court complaint, or the contents of the state court complaint. Thus any FDCPA causes of action (excepting those in connection with the post-judgment remedies) accrued, at the latest, when the state court complaint was filed on May 4, 2004. The bulk of the FDCPA claims are time-barred.

Knobbe asserts that "[e]very letter that the Defendants write, any attempt to engage in a collection including any court actions against me . . . is a series of continuing violations." (Filing 50, P.'s Br. in Opp'n to Mot. for Summ. J. at 6.) I reject this continuing violation argument. *See, e.g.*, *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (one-year statute of limitations began to run on judgment debtors' FDCPA claim against judgment creditor and its attorneys as of filing of judgment creditor's complaint in state court debt collection suit, on which claim was based); *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1007 (D.N.D. 2006) (in suit alleging 15 U.S.C. § 1692e(8) violation for continuing to report debt after notification of dispute, limitations period was not extended, under "serial violation" theory, by the defendant's continued reporting of the debt).

The latest factual allegation regarding Hanna is the March 25, 2004 "transfer" of the debt to Brumbaugh & Quandahl. (Amended Complaint ¶ 15.) Thus any FDCPA claims against Hanna are time-barred.

As to Brumbaugh & Quandahl, it asserts that under the *Rooker-Feldman* doctrine this court lacks jurisdiction over any FDCPA claims against it that are not time-barred. I first discuss *Rooker-Feldman* and then examine the nature of the remaining claims against Brumbaugh & Quandahl.

The Eighth Circuit has recently explained the *Rooker-Feldman* doctrine as follows:

> The Rooker-Feldman doctrine prohibits lower federal courts from exercising appellate review of state court judgments. The United States Supreme Court is the only federal court empowered to exercise appellate review of state court judgments, except for habeas petitions. A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court. Rather, Rooker-Feldman is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

*Skit Int'l v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1156-57 (8th Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 292 (2005); other internal citations omitted), *petition for cert. filed*, 76 U.S.L.W. 3074 (Aug. 17, 2007) (No. 07-238).

Since *Exxon*, the courts which have considered the applicability of the *Rooker-Feldman* doctrine to the situation where creditors obtain a judgment in state courts but subsequently have their debt collection practices challenged under the FDCPA in federal court have concluded that when the FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, the FDCPA claim is independent from the state court collection action and the federal court has subject matter jurisdiction over that FDCPA claim. *See, e.g., Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 435-37 (6th Cir. 2006) (plaintiff alleged defendant law firm violated FDCPA by executing and filing a false, deceptive, or

misleading affidavit in a state court garnishment action; *Rooker-Feldman* inapplicable), *cert. denied*, 127 S. Ct. 261 (2006); *Anderson v. Gamache & Myers, P.C.*, No. 4:07CV336MLM, 2007 WL 1577610, at *4-6 (E.D. Mo. May 31, 2007) (plaintiff alleged defendant law firm violated FDCPA in attempting to collect debt by submitting to state court an allegedly false affidavit and by misleading debtor by attaching an unsigned cardholder agreement to its state court petition; *Rooker-Feldman* inapplicable); *Wyles v. Excalibur I, LLC*, No. Civ. 05-2798JRTJJG, at *1-2 (D. Minn. Sept. 7, 2006) (law firm allegedly violated FDCPA by seeking attorneys' fees and costs in state court default judgment; *Rooker-Feldman* inapplicable); *Senftle v. Landau*, 390 F. Supp. 2d 463, 468-70 (D. Md. 2005) (plaintiff alleged four FDCPA claims, all pertaining to the manner in which the attorney representing the creditor collected the debt and not to the validity of the underlying debt; *Rooker-Feldman* inapplicable).

The only FDCPA claims against Brumbaugh & Quandahl that are not time-barred stem from its pursuit of post-judgment remedies (garnishment and the sheriff's sale) and its representation of Bank of America in Knobbe's efforts to have the state court order Bank of America to accept a promissory note in satisfaction of the judgment. Knobbe asserts that these post-judgment actions violated the FDCPA because they are tainted by the law firm's failure to advise the state court that the debt they were assisting the creditor in collecting was in dispute. (Amended Complaint ¶¶ 19, 20.)[9] He also complains of the fact that the garnishment and the sheriff's sale occurred, and that Brumbaugh & Quandahl represented the creditor in the state court

---

[9]As I have explained, any FDCPA violations in connection with the filing of the state court suit are time-barred. Any failure to notify the state court that the debt was disputed occurred when the suit was filed, and I have rejected Knobbe's "continuing violation" theory.

proceedings.[10]  He alleges no other FDCPA violations in connection with the law firm's participation in these post-judgment actions.  As Knobbe is *not* asserting that particular actions by the law firm in connection with the post-judgment remedies (for instance, submitting false or misleading documents) constituted an independent violation of the FDCPA, under *Rooker-Feldman* this court lacks jurisdiction over the non-time-barred claims against Brumbaugh & Quandahl.

*State-Law Claim*

The only remaining claim is the state-law claim.  I shall decline to exercise jurisdiction over the state-law claim and dismiss it without prejudice to its reassertion in state court.  *See, e.g.*, *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999) (usually when all federal-law claims are dismissed before trial, the balance of factors to be considered in deciding whether to exercise pendent jurisdiction—judicial economy, convenience, fairness, and comity—will weigh in favor of declining to exercise jurisdiction over the remaining state-law claims).

III.

For the forgoing reasons,

IT IS ORDERED that:

1.     Defendants' motion for summary judgment (filing 45) is granted as to the federal claims;

---

[10]He may also be asserting that the state court lacked jurisdiction over him because the judgment against him was a default judgment.  If so, this court clearly lacks jurisdiction over that claim under *Rooker-Feldman.*

2. I decline to exercise jurisdiction over the pendent state law claim and it is dismissed without prejudice; and

3. Judgment will be entered by separate document.

September 26, 2007                BY THE COURT:

                                  *s/Richard G. Kopf*
                                  United States District Judge